IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SUE DAWSON, *o/b/o* N.B. a minor,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CASE NO. 4:21-CV-1756<br><br>JUDGE PAMELA A. BARKER<br><br>MAGISTRATE JUDGE<br>JONATHAN D. GREENBERG<br><br>**REPORT & RECOMMENDATION** |

Plaintiff Sue Dawson ("Plaintiff" or "Dawson") on behalf of N.B., a minor ("claimant" or "N.B."), challenges the final decision of Defendant, Kilolo Kijakazi,[1] Commissioner of Social Security ("Commissioner"), denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be VACATED and REMANDED for further proceedings consistent with this opinion.

## I. PROCEDURAL HISTORY

On November 17, 2019, Dawson, on behalf of N.B., a minor, protectively filed an application for SSI, alleging a disability onset date of July 14, 2010 and claiming N.B. was disabled due to ADD, anxiety, severe stomach pain, nutrition, severe weight loss, and asthma. Transcript ("Tr.") at 73, 164, 176. The application was denied initially and upon reconsideration, and Dawson requested a hearing before an administrative law judge ("ALJ"). Tr. 105.

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security.

1

On January 26, 2021, an ALJ held a hearing, during which Dawson and N.B., represented by counsel, and an impartial medical expert ("ME") testified. Tr. 33-71. On March 10, 2021, the ALJ issued a written decision finding that N.B. was not disabled. Tr. 15-27. The ALJ's decision became final on July 13, 2021, when the Appeals Council declined further review. Tr. 1-3.

On September 10, 2021, Dawson filed her Complaint to challenge the Commissioner's final decision. Doc. No. 1. The parties have completed briefing in this case. Doc. Nos. 8, 10, 12. Dawson asserts the following assignment of error:

> Whether the administrative law judge erred in failing to find a marked impairment in N.B.'s ability to attend and complete tasks where the administrative law judge failed to address medical expert testimony concerning N.B.'s marked impairment in this category when not on medication and N.B. was not on medication during the pendency of this claim due to other medical issues, and the record as a whole, including teacher report and guardian testimony, support a marked impairment?

Doc. No. 8, p. 1.

## II. EVIDENCE

**A.  Personal and Vocational Evidence**

N.B. was born in 2009 and was a school-age child on the date the application was filed. Tr. 16.

**B.  Relevant Medical Evidence[2]**

N.B. repeated 1st grade. Tr. 287. Her school identified problems and recommended an evaluation for special education services in 2016 and in the fall of 2017, but Dawson, her grandmother and legal guardian, declined an evaluation because she wanted to try medication to help N.B. focus. Tr. 287, 294. In March 2018, after N.B. continued to struggle, Dawson agreed to an evaluation. Tr. 287. At that time, N.B. was in 2nd grade. Tr. 287. She had taken Focalin for attention deficit hyperactivity disorder (ADHD). Tr. 288.

In May and June 2018, an evaluation was performed and testing showed that N.B. had a Full

---

[2] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs.

Scale IQ score of 71, which was in the 3rd percentile and classified as "very low." Tr. 288. An assessment based on teacher ratings yielded scores in the "clinical" range ("an indication of a high level of maladjustment") in "attention problems" and "attention deficit problems." Tr. 290, 291. N.B.'s classroom teacher indicated that, in the last two months, it was "very true or very often" that N.B. couldn't concentrate or pay attention for long, was confused or seemed to be in a fog, fidgeted, had difficulty following directions, was impulsive or acted without thinking, was inattentive or easily distracted, and failed to carry out assigned tasks. Tr. 292. The evaluator wrote, "Her effort and attention to task varied throughout assessment sessions. At times she appeared to impulsively answer or guess, not listen to directions, or stare around the room despite prompting. Testing was split among 2 sessions approximately 60 minutes in length." Tr. 292. A counselor stated that N.B. "could benefit from frequent reminders and redirections." Tr. 303.

The evaluation team concluded that N.B. qualified for special education services, as she "has a diagnosis of ADHD and exhibits symptoms which negatively impact her educational performance." Tr. 310. Her Individualized Education Program (IEP) provided accommodations including small group for tests, extra time (30 minutes more than peers) on tests, test questions read aloud, movement breaks, use of a timer, directions repeated or broken down into chunks, flexible seating, and visual cues. Tr. 268.

In January 2019, N.B. visited her pediatrician's office for a follow-up for her asthma. Tr. 242. A list of current medications included Focalin for attention deficit disorder (ADD). Tr. 245.

In April 2019, when N.B. was in 3rd grade, an annual IEP review was conducted and her special education services for ADHD were continued. Tr. 432-434. She received intervention services in a cotaught classroom with resource room pullout for reading and math and she was "exempt from the retention of not passing the 3rd grade reading guarantee testing" due to her ADHD and off-task behavior. Tr. 433. Her IEP notes that she "struggles to stay focused in the general education classroom

and needs multiple cues or prompts to stay on task, she needs directions repeated to her, and she also needs more guided practice and modeling or use of manipulatives with specific tasks." Tr. 434. In May, N.B.'s intervention specialist reported that she "struggles with ADHD and has difficulty staying focused within the gen ed and special education classroom in small group. Her academics are below expected for her age." Tr. 254.

In June 2019, N.B. had a consultative examination with clinical psychologist Thomas Evans, Ph.D. Tr. 318. Dawson reported that she was applying for benefits on behalf of N.B. for "everything" and that N.B. had asthma and was diagnosed with ADHD a year ago. Tr. 319. N.B. had been prescribed Focalin, a medication used to treat her ADHD symptoms, and the medication was helpful. Tr. 319. N.B. had not taken her medication the morning of the appointment and Dawson stated that N.B. was off her medication for the summer. Tr. 319. Dr. Evans did not observe any signs of ADHD during the exam. Tr. 320. Dawson stated that when N.B. was off her medication she was impulsive, restless, fidgety, distractible, and had difficulties concentrating, but Dr. Evans reiterated that he did not observe those behaviors during the appointment. Tr. 320. Dr. Evans diagnosed N.B. with unspecified ADHD and separation anxiety disorder. Tr. 319.

On August 15, 2019, N.B. saw her pediatrician Kari Jacono, M.D., for her 10-year exam and ADHD check-up. Tr. 329. Dr. Jacono noted that N.B. had taken Focalin for her ADD but stopped taking the medication for the summer and wanted to restart it for the school year. Tr. 329. Dawson commented that N.B. had not had headaches or abdominal issues if she ate enough before taking Focalin. Tr. 329. Dr. Jacono stated that N.B. showed good symptom control on the medication and ordered her to return in three to four months or sooner if she had concerns. Tr. 335.

On November 20, 2019, N.B. saw Dr. Jacono for stomach issues and decreased appetite for the last couple of weeks, separation anxiety, sore throat, and cough. Tr. 336. She had not been taking

Focalin "during this time." Tr. 336. Dr. Jacono ordered lab tests, prescribed medication, and referred her to a pediatric gastroenterologist. Tr. 341.

On December 9, 2019, N.B. saw Certified Nurse Practitioner Mary Dombrowski at a pediatric gastroenterologist office. Tr. 342. She was assessed with GERD, abdominal pain, anxiety, and poor weight gain and prescribed medication for abdominal pain, appetite, and acid reflux. Tr. 343. Dombrowski started her on medications: cyproheptadine, an appetite stimulant and to help with pain; acid reflux medication; and an additional medication to help with stomach pain as needed. Tr. 343. N.B. followed up on January 27, 2020 and Dombrowski noted that she was "overall improved." Tr. 349. She had less abdominal pain, less GERD, had gained 3 pounds and was eating more, and liked school better because she was doing better at school. Tr. 350. Dombrowski continued her gastrointestinal medications. Tr. 349. Focalin was not listed as a current medication. Tr. 353.

On February 3, 2020, Dawson completed a Function Report. Tr. 186-195. She reported that N.B.'s ability to pay attention and stick with a task was limited; N.B. "has a hard time finishing what she starts. Loses interest quickly. It is a battle to get homework done and only if someone is standing over her and helping." Tr. 189. N.B. "has a hard time concentrating. Does not pick up on things well. Understanding things are a challenge. Cannot sit still for a minute, does not focus well. She is a great sweet loving and giving child but has a hard time with most things." Tr. 189.

In February 2020, Martin Orlando, one of N.B.'s 4th grade teachers, completed a teacher questionnaire. Tr. 356-364. He stated that N.B.'s current reading and math was at the 2nd grade level and that she received small group instruction daily. Tr. 356. He opined that N.B. had a "slight" problem paying attention when spoken to, sustaining attention during play/sports activities, carrying out single-step instructions, and waiting to take turns. Tr. 359. She had an "obvious" problem focusing long enough to finish assigned activity, refocusing to task when necessary, carrying out multi-step

5

instructions, changing from one activity to another without being disruptive, organizing own things, completing class/homework assignments, and working at a reasonable pace/finishing on time. Tr. 359. She had a "serious" problem completing work accurately without careless mistakes and working without distracting self or others. Tr. 359.

In March 2020, N.B. saw consultative examiner Dr. Evans for another evaluation. Tr. 427-430. Dawson reported that N.B. had been off Focalin, her ADHD medication, for 4 months due to side effects; she "was off it last summer and went back on it in the beginning of the schoolyear." Tr. 428. Dawson reported problems focusing and maintaining concentration. Tr. 428. Dr. Evans commented that N.B.'s attention was good during the evaluation. Tr. 428. He performed testing, which confirmed a Full Scale IQ score of 71, in the 3rd percentile. Tr. 429. Dr. Evans remarked that he did not observe N.B. to be restless or fidgety during the evaluation and that her effort persisted as the testing became more difficult, despite N.B. not taking her Focalin. Tr. 430. He diagnosed borderline intellectual functioning, unspecified attention deficit hyperactivity disorder, and unspecified anxiety disorder. Tr. 430.

In April 2020, when N.B. was in 4th grade, her IEP underwent annual review and her accommodations were continued. Tr. 723, 724. She "prefers a small group setting for all academic subjects" and "has difficulty paying attention in class, as well as retaining information taught." Tr. 724. "She tends to hurry through her work, and doesn't take time to complete questions, both multiple choice and written response with accuracy." Tr. 724. She "struggles to stay focused in the general education classroom and needs multiple cues or prompts to stay on task." Tr. 725.

On July 6, 2020, N.B. saw Thomas Sferra, M.D., in the pediatric gastroenterology department for her vomiting, GERD, poor weight gain, and abdominal pain. Tr. 822-823. She had a history of eosinophilic esophagitis "seemingly controlled by partial elimination of dairy." Tr. 823. She had

6

undergone an EGD scope and a colonoscopy in June and was diagnosed with inflammation of the colon (collagenous colitis), "an uncommon/rare disorder in children [that] might be an early sign of inflammatory bowel disease." Tr. 823.

On August 13, 2020, N.B. saw Dr. Jacono for a well visit. Tr. 493. Dr. Jacono noted her abdominal pain, GERD, poor weight gain, and height deceleration; her history of milk allergy; and advised she continue her appetite stimulant, cyproheptadine. Tr. 494. She noted that N.B. had an upcoming EGD and colonoscopy and wrote, "will hold [ADHD] meds while being evaluated for abd pain & poor weight gain." Tr. 494. She discussed behavioral interventions to help with symptoms and commented that N.B. was doing virtual school that year and "will consider restarting meds if struggling this year[.]" Tr. 494. She noted that Dawson was hesitant to restart N.B.'s ADHD medications but that N.B. was worried that she would not do well in school. Tr. 495.

On October 5, 2020, N.B. saw Dr. Sferra for a follow-up. Tr. 813-814. She had had further testing. Tr. 819-821. Dr. Sferra continued her medications, restarted cyproheptadine, which another provider had removed, and planned to schedule an appointment for N.B. to see a dietician. Tr. 813.

In November 2020, it was discovered that N.B. had an osteoblastoma at the C7 level of her cervical spine; that month she had it removed and her spine was fused from C6-T1. Tr. 678.

**C.** **State Agency Reports**

On April 6 and 8, 2020, Aracelia Rivera, Psy.D., and Louis Goorey, M.D., reviewed N.B.'s record and found that she had no limitation in the domain of moving about and manipulating objects and less than marked limitations in the remaining five domains. Tr. 76-77. On July 29, 2020, Paul Tangeman, Ph.D., and Robert Klinger, M.D., agreed. Tr. 83-84.

**D.** **Hearing Testimony**

During the January 26, 2020 hearing, N.B. testified to the following:

- She is in 5th grade. Tr. 42. She is learning from home and is struggling. Tr. 42. The hardest part is being on virtual and the best part is being home. Tr. 42. When she is not doing schoolwork she plays on her tablet. Tr. 42. She lives with her grandmother and her pet rabbit. Tr. 43. She cleans its cage every 2 weeks and her grandmother has to tell her to do it. Tr. 43. She cleans and organizes her room every day. Tr. 43-44.

- She has trouble paying attention to the teacher when she is virtual and when she is in the classroom. Tr. 44. Math and reading are hard and she likes science and does better in it. Tr. 44. She has missed school because of her cervical spine surgery and her asthma. Tr. 44.

Next, Dawson testified to the following:

- When asked how N.B.'s ADHD affects her on a daily basis, she stated that it's "definitely affecting her and they can't—they won't even discuss the medication." Tr. 52. "They had her on medication for it. But then all of a sudden the problem started with her so they removed that immediately because the stomach issues, the colitis came about and, you know, the pain started and so that stopped. So she hasn't been able to take that medication for her ADHD because all of these other issues, they keep coming up. But that—it's needed." Tr. 52. When she is on the medication, she is able to focus and stay on task longer. Tr. 52. For example, it can be a quiet evening with the two of them, and if Dawson moves, N.B.'s "mind goes off" and she's hard to get back on track. Tr. 53. She can't focus on anything for an extended period of time. Even if it is something she enjoys, she can only focus for a half an hour. Tr. 53-54. She can't complete cleaning her rabbit's cage at one time. Tr. 54. She helps wash dishes. Tr. 59.

- She discussed N.B.'s IEP in school. Tr. 55-56. N.B. started seeing a new doctor for her colitis. Tr. 56. Her symptoms are stomach pain, horrible appetite, and some diarrhea. Tr. 57. She eats better in the mornings. Tr. 57.

The ALJ asked the ME to list N.B.'s impairments and the ME listed them. Tr. 62-63. The ME stated, "She does have ADHD and was on a medicine. I think it's documented that the medicine provided good symptom control. I understand that she hasn't been taking it a lot because of the [inaudible], but it does work when she takes it." Tr. 62. The ALJ asked the ME to evaluate the six domains of functioning and the ME found that N.B. had, in pertinent part, a "less than marked" limitation in attending and completing tasks. Tr. 64. The ME stated, "that's mainly from the ADHD. And like I said, it's documented that the medicine was working well. So you just have to figure out how you get her to take it, I guess." Tr. 64.

Next, the attorney had the following exchange with the ME:

8

> Q: [Dawson] indicated in her testimony that they took her off the medication because of all of her other medical problems. So they were reading why she wasn't taking it. But again, not a volitional thing as far as like just refusing to take it or something like that. Is there any indication that you found in the record otherwise contrary to that?
>
> A: Well I think they may have stopped it for a short period….[explaining that N.B.'s primary care physician had indicated that her ADHD's symptoms were controlled in August 2019]
>
> Q: Okay. That's actually before the time period that is at issue here. The application date is November of '19 up until now is the same period. If she had not been able to take it in that time period, would there be a marked limitation without the medication?
>
> A: If she was not on the medicine, yes.

Tr. 69-70.

### III. STANDARD FOR DISABILITY

An individual under the age of eighteen is considered disabled if she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner reaches a determination as to whether an individual under the age of 18 is disabled by establishing whether a claimant has a severe medically determinable impairment and, if so, whether the claimant has an impairment or combination of impairments that meets, medically equals, or functionally equals the listings. 20 C.F.R. § 416.924(d). In determining whether an impairment or combination of impairments functionally equals the listings, the ALJ assesses the claimant's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for self; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). To functionally equal the listings, the claimant's impairment must result in "marked" limitations in two domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant was born on July **, 2009. Therefore, she was a school-age child on November 7, 2019, the date application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).

2. The claimant has not engaged in substantial gainful activity since November 7, 2019, the application date (20 CFR 416.924(b) and 416.971 *et seq*.).

3. The claimant has the following severe impairments: borderline intellectual functioning; attention-deficit hyperactivity disorder; anxiety; status post resection of her right-sided C7 lamina/superior articular facet osteoblastoma with C6-T1 posterior spinal fusion; asthma; colitis; and gastroesophageal reflux disease (20 CFR 416.924(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

6. The undersigned finds that the claimant has not been disabled, as defined in the Social Security Act, since November 7, 2019, the date the application was filed (20 CFR 416.924(a)).

Tr. 16-27.

### V. STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at * 2 (6th Cir. April 1, 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip*

*v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir.2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached."). This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D.

Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996)); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D.Ohio July 9, 2010).

## VI. ANALYSIS

Dawson argues that the ALJ erred when he found that N.B. has a less than marked impairment in the ability to attend and complete tasks. Doc. No. 8, p. 13. She asserts that the ALJ acknowledged that medication helped N.B. but ignored the fact that N.B. was unable to take her medication because of her gastrointestinal problems. In addition, Dawson argues, the ALJ found the ME's testimony that N.B. had a less than marked limitations in attending and completing tasks to be "persuasive," but the ME had testified that that assessment was based on the fact that N.B. took her medication; without medication, the ME stated, N.B. would have a marked limitation in that area of functioning. Doc. No. 8, pp. 13-14.

Defendant contends that the record does not reflect that N.B. was unable to take her ADHD medication. Doc. No. 10, p. 6. Rather, Defendant argues, "the record shows that N.B.'s ADHD medication was temporarily stopped while her physicians determined the appropriate treatment for the abdominal pain and lack of weight gain" and "the record reflects a number of statements indicating that the medication could be restarted if Plaintiff or N.B.'s physicians decided the medication was necessary." Doc. No. 10, p. 6. Moreover, Defendant submits, the evidence does not support Dawson's statement that N.B. had a marked limitation in attending and completing tasks. Doc. No. 10, pp. 6-8.

The undersigned finds that the ALJ erred when assessing N.B.'s ability to attend and complete tasks because he relied, in part, on the fact that N.B.'s condition improved with medication but failed to acknowledge evidence in the record showing that N.B. could not take her medication.

12

First, Dawson testified that N.B.'s providers removed her ADHD medication, Focalin, because she developed colitis and abdominal pain; that those issues are recurring; and that she hasn't been able to take her Focalin because of those issues. Tr. 52. Dawson's testimony is evidence in the record that N.B.'s providers stopped her Focalin and that she could not take it because of her ongoing gastrointestinal issues. Moreover, there is evidence in the record (pre-colitis) suggesting that Focalin caused N.B. to experience abdominal pain if she did not eat enough before she took it. Tr. 329 (August 2019 visit with N.B.'s pediatrician, Dr. Jacono). There is also evidence in the record from July 2020 showing that N.B. had vomiting, GERD, abdominal pain, weight loss/poor weight gain, and was taking an appetite stimulant. Tr. 823. That is evidence suggesting that N.B. had ongoing gastrointestinal problems in which avoiding Focalin could be warranted and/or that she may not have been able to eat enough to take her Focalin without it causing more abdominal pain. Finally, the evidence shows that N.B.'s gastrointestinal issues were rare and serious (Tr. 823) such that the addition of Focalin could be problematic. The ALJ failed to address any of that evidence.

Next, the ME testified at the hearing that, with Focalin, N.B. has a less than marked limitation in the ability to attend and complete tasks, but without Focalin she has a marked limitation. Tr. 64, 70. The ALJ found the ME's testimony that N.B. had a less than marked limitation in attending and completing tasks to be persuasive but did not discuss the ME's testimony that without Focalin N.B. had a marked limitation in that area. Tr. 25. In fact, the ALJ stated that the ME explained his conclusions, "including on cross examination," but it was on cross examination that the ME concluded that N.B. would have a marked limitation if she did not take her Focalin. Tr. 25, 70. Thus, the undersigned finds that the ALJ's explanation for why he was persuaded by the ME's opinion that N.B. had a less than marked limitation in attending and completing tasks is not supported by substantial evidence.

Defendant argues that the evidence does not support Dawson's claim that N.B. could not take her

13

Focalin. Doc. No. 10, p. 9. Defendant cites treatment notes prior to N.B.'s application date and her onset of colitis in which she had been taking Focalin. Doc. No. 10, p. 9. That is not evidence showing that N.B. could take her Focalin after her application date, November 2019. Defendant identifies a visit N.B. had with her pediatrician, Dr. Jacono, in August 2020 in which Dr. Jacono noted that she would hold N.B.'s ADHD medication while she was being evaluated for abdominal pain and poor weight gain. Tr. 494. N.B. was attending school virtually and Dr. Jacono wrote, "will consider restarting [ADHD] meds if struggling this year." Tr. 494. Dr. Jacono added, "[Dawson] hesitant to restart ADHD [meds] but [patient] worried won't do well at school." Tr. 495. Defendant states, "Thus, the sparse treatment records related to N.B.'s ADHD reflect that her medication to control her symptoms was temporarily withheld and could be restarted at any time upon Plaintiff's and N.B.'s request." Doc. No. 10, p. 9. But Dawson's testimony is evidence, and there is medical evidence that could be read to support her statements, including from N.B.'s gastroenterologist. It is the ALJ's duty to resolve those conflicts in evidence, not the Court's duty.[3] *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) ("This Court may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility.").

Defendant's argument that other evidence cited by the ALJ supports his finding that N.B. had a less than marked limitation in the ability to attend and complete tasks fails; the ALJ's error with respect to N.B.'s medication was too widespread to be saved by the other evidence he cited. Moreover, Dawson argues that the ALJ erred when he evaluated the opinion provided by N.B.'s teacher and ignored the most severe limitations (Doc. No. 8, pp. 15-16, citing SSR 09-1p), an assertion that Defendant does not contest and which is borne out by the record. Tr. 20 (*e.g.*, ALJ discussing the teacher's "slight" and "obvious" assessments of N.B.'s ability to attend and complete tasks but not his "serious" assessments).

In sum, the undersigned finds that the ALJ erred when he evaluated N.B.'s ability to attend and

---

[3] Defendant's *post-hoc* argument that the record does not demonstrate that N.B.'s medication was withheld for longer than the statutory 12-month period necessary to establish disability (Doc. No. 10, p. 10) fails for the same reason.

14

complete tasks.  Accordingly, the undersigned recommends that the case be remanded so that the ALJ can resolve any conflicts in the evidence regarding N.B.'s ADHD medication and reevaluate the teacher's assessment.

### VII. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be VACATED and REMANDED for further proceedings consistent with this opinion.


Date: April 8, 2022                                  *s/ Jonathan Greenberg*
                                                   Jonathan D. Greenberg
                                                   United States Magistrate Judge


**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *See Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019).**